### In re MR. R'S PREPARED FOODS, INC., Debtor.

#### No. 97–23093.

United States Bankruptcy Court, D. Connecticut.

July 11, 2000.

---

Ross G. Fingold, Levy & Droney, P.C., Farmington, CT, for T & B Investments, LLC and Thomas Rotanelli.

John J. O'Neil, Jr., Francis, O'Neil & Del Piano, Hartford, CT, Chapter 7 Trustee.

Joan E. Pilver, Assistant Attorney General, Hartford, CT, for State of Connecticut, Departments of Revenue Services and Labor.

Steven C. Best, Special Assistant U.S. Attorney, East Hartford, CT, for United States of America, Internal Revenue Service.

## JOINT RULING ON MOTIONS FOR RELIEF FROM STAY FILED BY (1) T & B INVESTMENTS, LLC and (2) THOMAS ROTANELLI

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Mr. R's Prepared Foods, Inc. ("the debtor")[1] filed a Chapter 11 petition on July 11, 1997. On February 28, 2000, T & B Investments, LLC ("T & B") and Thomas Rotanelli ("Rotanelli") (together "the movants") filed separate motions for relief from the automatic stay in order to enforce each movant's prepetition perfected security interest in certain assets of the debtor. On March 2, 2000, the court converted the debtor's bankruptcy case to a liquidation proceeding under Chapter 7 and appointed a trustee. The Chapter 7 trustee, John J. O'Neil, Jr., Esq., supported by the United States of America, Internal Revenue Service and the State of Connecticut, Departments of Revenue Services and Labor, as holders of claims for

---

1. As of the date of its Chapter 11 petition, the debtor operated under two different trade names—Mr. R's Prepared Foods, and Lady B Foods.

administrative expenses (together "the objectors"), objected to the motions. A hearing was held on May 4, 2000 at which time the court heard the testimony of Rotanelli and various exhibits were introduced into evidence. The parties thereafter submitted extensive post-hearing memoranda of law.

## II.

## BACKGROUND

The debtor is a closely held corporation owned and managed since its incorporation in 1994 by Rotanelli and other members of his immediate family. T & B is a limited liability company formed on March 11, 1996 by Rotanelli and his wife for the purpose of managing their investment portfolio.

On January 31, 1995, the debtor borrowed $490,000 from The Bank of New York ("the Bank") in return for which it gave a promissory note ("the secured note"), personally guaranteed by Rotanelli, and a duly perfected security interest in all of the debtor's present and after-acquired accounts receivable and inventory. When the debtor was unable to repay the secured note, the Bank filed a lawsuit against the debtor and Rotanelli, as guarantor. To settle the lawsuit, T & B, on March 22, 1996, purchased the secured note from the Bank. Following a cash payment from T & B equal to the $490,000 outstanding principal plus interest and fees, the Bank assigned to T & B the secured note and the security interest. The assignment of the security interest was duly filed.

On October 24, 1995 and December 7, 1995, Rotanelli made two loans to the debtor of $200,000 and $300,000 ("the $500,000 loans"). In return, on January 30, 1996, the debtor executed separate promissory notes to Rotanelli for such amounts and granted Rotanelli a duly perfected security interest in all of the debtor's present and after-acquired assets, including equipment.

After the debtor, on July 11, 1997, filed a Chapter 11 bankruptcy petition, it continued to operate the business as debtor in possession. Rotanelli's son, Mario Rotanelli ("Mario"), assumed responsibility for management of the debtor's day to day operations. Rotanelli remained actively involved in the debtor's operations in various capacities, but received no salary or other compensation therefor. The court, on July 8, 1999, confirmed the debtor's plan of reorganization. The plan's consummation was contingent upon the sale, to a newly formed company, LB Manufacturing (LB) owned by the debtor's principals, of the debtor's assets with third party financing to be provided by Jack Conley ("Conley") and River City Capital, LLC.

The debtor has not paid postpetition rent, amounting to $168,000, to Rotanelli, the owner of the real property on which the debtor's operations were located. The confirmed plan provided that Rotanelli's administrative claim for the unpaid postpetition rent would be subordinated to the claims of other creditors. (Plan ¶ 3.01(a), Tr.Ex. A.) The plan further provided that, "As consideration for approval of the Plan, [the claims at issue in this proceeding plus an additional $55,000 postpetition secured loan] shall be extinguished upon confirmation of the Plan and the sale of the Debtor's assets to LB pursuant thereto." (Plan ¶¶ 5.01, 5.03, 5.04, Tr.Ex. A.) The plan provided for payment in full, from the proceeds of the sale of assets to LB, of all other allowed administrative claims, priority and tax claims. Allowed general unsecured claims, excluding $3,400,000 of such claims held by Rotanelli, members of his family, and various entities owned by them, would receive a pro rata share of $125,000 from the proceeds of the asset sale. Equity interests would be extinguished and receive no distribution under the plan.

In anticipation of the sale of assets to LB, LB hired the debtor's employees. Following plan confirmation, the debtor's checking account was terminated by its

bank and Mario opened an account in his name d/b/a/ Lady B Foods for the debtor's use. The required financing never materialized, the plan was not consummated, and on various parties' motions, the court, as noted, on March 2, 2000, converted the debtor's case to one under Chapter 7.

The disclosure statement and confirmed plan indicate that Rotanelli supplied an initial capital contribution of $1,000,000 to the debtor (Tr.Ex. 1 at 7) and prepetition unsecured loans of $3,400,000 (Tr.Ex. 1 at 10), in addition to the secured loans at issue in this proceeding, and a subordinated post-petition loan of $55,000. The debtor's assets are valued at $175,365, consisting of $15,000 of inventory, $24,365 of accounts receivable and $136,000 of machinery and equipment. (Tr.Ex. 1 at 11.) No party disputes any of the relevant amounts.

The movants submit that they have satisfied their burdens of proof, warranting the granting of the motions. The objectors contend the court should deny the motions on the sole ground that Rotanelli and T & B are insiders of the debtor whose claims should be equitably subordinated pursuant to Bankruptcy Code § 510(c).[2]

### III.

### BURDEN OF PROOF

The movants have the burden of proof on the issue of the debtor's equity in the property and the objectors have the burden of proof on all other issues. 11 U.S.C. § 362(g). It is undisputed that T & B has a perfected security interest in the debtor's accounts receivable and inventory to secure its claim of $490,000; that Rotanelli has a perfected second security interest in some of the debtor's assets and a perfected

first security interest in the debtor's equipment securing his claim of $500,000; and that the debtor has made no payments on any of these obligations. It is also undisputed that the debtor's total assets have a value of $175,365 and that the debtor has no equity in these assets. Thus, each of the movants has met its and his burden of proof.

While the objectors do not dispute the debtor's lack of equity or the validity of the movants' security interests, they assert, as an affirmative defense, that the security interests at issue should be equitably subordinated. "The affirmative defense of equitable subordination under Code § 510(c) may properly be asserted as a defense to a motion for relief from stay." *In re Poughkeepsie Hotel Assoc. Joint Venture,* 132 B.R. 287, 293 (Bankr. S.D.N.Y.1991) (relying on the rationale adopted by the Second Circuit Court of Appeals in *In re Sonnax Industries, Inc.,* 907 F.2d 1280 (2d Cir.1990)). "The issue is limited to whether the [objectors have] presented sufficient evidence of the bona fides of their claim for the court to deny the motion for relief from stay." *Resolution Trust Corp. v. Shehu (In re Shehu),* 128 B.R. 26, 29 (Bankr.D.Conn.1991).

### IV.

### EQUITABLE SUBORDINATION

Equitable subordination is an unusual remedy which should be applied only in limited circumstances. *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)* 926 F.2d 1458, 1464 (5th Cir.1991). In determining whether equitable subordination of a claim is justified, courts have generally applied the three-pronged *Mobile Steel*

---

2. 11 U.S.C. § 510 provides in relevant part:

 . . .
 (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
 (1) under principles of equitable subordination, subordinate for purposes of distribution

all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
 (2) order that any lien securing such a subordinated claim be transferred to the estate.

test, which requires (1) inequitable conduct by the creditor whose claim is to be subordinated (2) resulting in unfair advantage to the malefactor and/or harm to the debtor or its other creditors, and (3) that equitable subordination would not be inconsistent with other aspects of the Bankruptcy Code. *Benjamin v. Diamond (In re Mobile Steel)*, 563 F.2d 692, 699–700 (5th Cir.1977); *See also United States v. Noland*, 517 U.S. 535, 538–39, 116 S.Ct. 1524, 1526, 134 L.Ed.2d 748, 754 (1996) (citing the *Mobile Steel* test as that generally followed) . . . .

*White Current Corp. v. Rural Util. Svc. (In re Vermont Elec. Gen. & Transmission Coop., Inc.)*, 240 B.R. 476, 482 (Bankr. D.Vt.1999).

■ The extent and severity of the inequitable conduct required for equitable subordination depends on whether the movants were insiders of the debtor. "Where the claimant is an insider or fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct. Once the trustee meets this burden, the claimant must then prove the fairness of his transactions with the debtor or his claim will be subordinated." *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986).

■ The movants do not dispute that they were insiders of the debtor at the time they obtained the security interests at issue. However, "[t]he cases are clear that the mere fact of an insider relationship is insufficient to warrant subordination. The insider status goes only to establishing the standard to apply in reviewing the insider's conduct. In order to equitably subordinate a creditor's claim, the creditor-insider must actually use its power to control to its own advantage or to the other creditors' detriment." *Fabricators*, 926 F.2d at 1467 (citations omitted). The court will consider the objectors' allegations of insider misconduct.

### A. The T & B Motion for Relief from Stay

■ The security interest presently held by T & B was initially given to the Bank as security for a loan. When the debtor defaulted on the note, the Bank sought payment from Rotanelli as guarantor. The objectors contend that T & B's purchase of the note is equivalent to its purchase by Rotanelli; for the purposes of the present motion, Rotanelli has not argued otherwise. The objectors argue that, although T & B purchased the note for the full amount due thereunder, the Bank's conveyance of its security interest to T & B in return for its purchase of the note conferred an unfair advantage on Rotanelli, since, as guarantor of the note, he was already liable for its payment.

■ "In [the Second] Circuit, the second requirement for equitable subordination involves a conjunctive test, requiring a showing of both unfair advantage to one creditor and harm to the debtor or its other creditors. . . . [*See*] *Cosoff v. Rodman (In re W.T Grant Co.)*, 699 F.2d 599, 611 (2d Cir.1983) ('They must show at least that the banks acted solely for their own benefit, taking into account their [senior position] . . . *and* adversely to the interest of others.') (emphasis added)." *White Current Corp.*, 240 B.R. at 485.

■ "It is generally held that in equity when one standing in such a relation (guarantor) pays he is, at least as against the debtor primarily liable, subrogated to all the rights and remedies of the creditor, and this even without a formal assignment of the debt or judgment. Thus, [the guarantor] is subrogated to all the rights of the bank, including the right to the debt itself, and has the same priority with respect to the perfected security interest as that of the bank." *First Nat'l Bank of Sikeston, Missouri v. Jefferson Sales & Distrib., Inc.*, 341 F.Supp. 659, 672 (S.D.Miss.1971), *aff'd* 460 F.2d 1059 (5th Cir.1972) (applying U.C.C. § 9–504(5), which is enacted in Connecticut as Conn.Gen.Stat. § 42a–9–

504(5)). T & B's purchase of the note and receipt of the Bank's security interest, therefore, left the debtor's other creditors in the same positions they would have been in had the Bank collected the indebtedness directly from Rotanelli under his guaranty. The court concludes that the T & B's conduct in relation to the acquisition of the Bank's security interest neither conferred an unfair advantage upon it, nor inflicted any harm upon other creditors. Accordingly, the objectors have not established colorable grounds for equitable subordination of T & B's secured claim.

### B. The Rotanelli Motion for Relief from Stay

 The objectors contend that the debtor was undercapitalized and that Rotanelli's secured claim for the $500,000 loans should, therefore, be recharacterized as equity contributions. While an insider loan to an insolvent corporation may be indicative of undercapitalization, "undercapitalization alone generally is insufficient to justify equitable subordination without evidence of additional inequitable conduct." *Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods)*, 2 F.3d 128, 132 (5th Cir.1993) (insider secured loan was equitably subordinated where insiders intentionally misrepresented debtor's financial condition to other creditors by not initially reflecting the loan on the debtor's books and later listing it as unsecured; no loan agreement existed; and debtor was undercapitalized from date it was acquired by insider); *see also Pepper v. Litton,* 308 U.S. 295, 309, 60 S.Ct. 238, 246–47, 84 L.Ed. 281 (1939) (insider's advances may be equitably subordinated "where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan."); *Fabricators,* 926 F.2d at 1470 ("clear that undercapitalization was not the sole reason for equitably subordinating [insider's] claims in light of [insider's] other inequitable conduct. . . .").

The objectors do not dispute that Rotanelli provided initial capitalization of $1,000,000 to the debtor, that the documentation supporting the $500,000 loans clearly indicates they were executed as secured loans; or that the proceeds of the loans were used for paying ongoing expenses of the company, not for the acquisition of capital improvements or payments to insiders. The objectors have presented no evidence that the initial capitalization of the debtor was inadequate. Nor did they show how the transaction at issue unfairly benefitted Rotanelli. To the contrary, Rotanelli supplied the debtor with $500,000 cash in return for two notes secured by not more than $136,000 worth of assets.

The objectors rely on *In re Cold Harbor Assoc., L.P.,* 204 B.R. 904 (Bankr.E.D.Va. 1997), to support their argument that Rotanelli's loans should be equitably subordinated. Such reliance is misplaced. First, the court in *Cold Harbor* was not concerned with equitable subordination or recharacterization of the alleged loans, but with determining whether, at the time the advances were made, they were loans or contributions to equity. *Id.* at 915 ("Rather than recharacterizing the exchange from debt to equity, or subordinating the claim for some reason, the question before this Court is whether the transaction created a debt or equity relationship from the outset."). Furthermore, this court finds that consideration of the various factors enumerated in *Cold Harbor* favors the conclusion that the loans at issue in this proceeding were properly characterized as such. In *Cold Harbor,* the court noted that the partners' advances were directly in proportion to the ownership interests, that the note at issue was wholly unsecured, and that the proceeds of the alleged loan were used for the acquisition of capital assets. None of those factors are relevant to the present proceeding. A number of factors cited in *Cold Harbor* as indicative of a debtor-creditor relationship, however, are applicable here—e.g., the loans at issue here properly complied with all the formal-

ities associated with secured loans, the transactions at issue did not reallocate control of the corporation, there is no evidence that the debtor was inadequately capitalized from its inception.

The court concludes that, without some inequitable conduct on the part of Rotanelli and his attainment of an unfair advantage to the detriment of the debtor's other creditors, equitable subordination of Rotanelli's secured claim would not be justified.

### C. Other Allegations of Misconduct

The objectors contend that certain other actions of insiders provide grounds for equitable subordination. The court concludes that these arguments lack substance.

 The objectors argue that the conduct of the debtor's President, Rotanelli's son Mario, in maintaining a checking account in his own name, d/b/a Lady B Foods, for the debtor's use was inequitable. The court credits Rotanelli's testimony that the bank with whom the debtor had maintained its checking account closed the account, that several other banks also refused to open an account in the debtor's name and that the account at issue was necessary to permit the debtor to operate. The objectors have presented no evidence that the account at issue was misused, or that Mario commingled the funds of the debtor with any other funds. The court concludes that Mario acted in good faith with regard to the opening and operation of the checking account.

The objectors also allege that the "movants' agreement in the confirmed plan to subordinate their secured insider claims ... show that they tacitly admit that the claims should be subordinated." (Tr.Mem. at 18.) However, the plain language of the plan provides, "As consideration for approval of the Plan, this claim shall be extinguished upon confirmation of the Plan *and the sale of the Debtor's assets to LB pursuant thereto.*" (Plan ¶¶ 5.03–5.04, Tr. Ex. A. (emphasis added)) Because the third party financing required for the sale

to occur failed to materialize, the subordination provisions never took effect. Rotanelli testified that, shortly after plan confirmation, he completed everything he was required to do to obtain the necessary financing and that he was constantly reassured by Conley that the funds would be arriving shortly. The court concludes that Rotanelli acted in good faith to obtain the necessary financing and that, in the absence of the sale of assets to LB, the movants were not obligated by the terms of the plan to subordinate their claims.

### V.

### CONCLUSION

In accordance with the foregoing discussion, the court concludes that each of the motions of the movants for relief from the automatic stay imposed under Bankruptcy Code § 362(a) shall be, and hereby is, granted. It is

SO ORDERED.