In re EUFAULA INDUSTRIAL AUTHORITY, Debtor.

Carter–Waters Oklahoma, Inc., and Wells Enterprises, Inc., Plaintiffs–Counter–Defendants–Appellants,

v.

Bank One Trust Company, N.A., successor by merger to Liberty Bank & Trust Company, N.A., a national association, as trustee of the Eufaula Industrial Authority Bond Indenture of December 1, 1993, Defendant–Appellee.

Eufaula Industrial Authority, Defendant–Counter–Claimant–Appellee.

BAP No. EO–00–083.
Bankruptcy No. 97–71225.
Adversary No. 98–7021.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Aug. 21, 2001.

Mark D. Mitchell, Mitchell, Davis, Klein & Pickens, Oklahoma City, Oklahoma, for plaintiffs-counter-defendants-appellants.

G. Blaine Schwabe, III (Sarah A. Hall with him on the brief), Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Oklahoma, for defendant-appellee Bank One Trust Company, N.A.

Before PUSATERI, BOULDEN, and KRIEGER, Bankruptcy Judges.

## OPINION

BOULDEN, Bankruptcy Judge.

Carter–Waters Oklahoma, Inc. (Carter–Waters) and Wells Enterprises, Inc. (Wells) (collectively, the Contractors) appeal a Judgment dismissing their complaint seeking to equitably subordinate the claim of Bank One Trust Co. (Bank One Trust) to the claims of the Contractors pursuant to 11 U.S.C. § 510(c) or, alternatively, upon theories of unjust enrichment, third party beneficiary, and misrepresentation. The bankruptcy court concluded that inequitable conduct was a necessary element of the Contractors' claim for equitable subordination and found that the Contractors failed to prove that Bank One Trust had engaged in inequitable conduct. Having carefully reviewed the record, the parties' arguments and applicable case law, we AFFIRM.

## BACKGROUND

Sometime prior to 1993, the Debtor, Eufaula Industrial Authority (Debtor), decided to develop and construct an outdoor amphitheater and amusement park (the Project) in Eufaula, Oklahoma. The Project was to be financed, in part, by a $5 million bond issue. The bonds were sold, and the proceeds were turned over to Bank One Trust, acting as Trustee of the Eufaula Industrial Bond Indenture (the Indenture) of December 1, 1993. The beneficiaries of the Indenture trust were the related bondholders (the Bondholders). Both the real and the personal property comprising the Project were mortgaged to Bank One Trust as security for the bond obligations and for the benefit of the Bondholders.

In October 1994, the Debtor and Wells entered into a Contract for Concrete Foundation and Slabs for the Mega Star Amphitheater (the Wells Contract) for a total bid price of $340,700. Approximately a month later, the Debtor and Carter–Waters entered into a Contract for the Stage Building and Seating Roof for the Mega Star Amphitheater (the Carter–Waters Contract) for a total bid price of $535,446. Bank One Trust was not a party to either of these contracts. The Contractors commenced work and thereafter submitted payment requisitions to Bank One Trust.

Under the terms of the Indenture, Bank One Trust established an account into which proceeds of the Bonds were deposited for payment of approved requisitions (the Project Fund). As of February 1995,

the Project Fund balance was $572,209.48. Under Section 5.07 of the Indenture, "[a]ny disbursement by the Trustee [t]hereunder is a ministerial act and the Trustee has no duty or obligation to examine, review or monitor the use of such monies by the Authority." Indenture at 27, *in* Appellants' Appendix at 142. The Indenture further provides:

> If the amounts requested to be disbursed exceed the Construction Budget, the Authority must, prior to disbursement [by the Trustee], set forth an amendment to the Construction Budget which either (1) provides for elimination or redesign of portions [of] the Project which have not yet been made the subject of a Construction Contract so that the total amount of the Construction Budget does not exceed the total amount of the Project Fund, or (ii) provide for the Authority to deposit in the Project Fund the full amount of the excess of the Construction Budget, as amended, over the Project Fund prior to such additional deposit.

*Id.* at 28–29, *in* Appellants' Appendix at 143–44.

During the fall of 1994, Bank One Trust became aware that the Debtor was experiencing financial problems and had insufficient revenues to make a scheduled payment to the Bondholders. Bank One Trust was further advised in late January or early February of 1995 that there were additional problems and that the Project might be over-budget. Jake Riley (Riley), a senior vice-president in Bank One Trust's Trust Department and the officer responsible for the day-to-day operations of Bank One Trust under the Indenture, testified that the $5 million raised under the Indenture was not intended to be the only source of funds for the Project. Along with the money raised through the issuance of bonds under the Indenture, the

Debtor envisioned raising additional funds from other sources, including grants. Riley further testified that even after the Project appeared to be facing funding problems, representatives of the Debtor assured Bank One Trust that additional funding was in process.

On March 15, 1995, Bank One Trust paid $100,000 from the Project Fund to special workout counsel pursuant to a resolution of the Debtor and after receiving a requisition from the Debtor requesting such payment. Based upon the Debtor's assurances of additional funding, Bank One Trust, with other participants in the financing, assisted in preparing a March 30, 1995, letter to the Bondholders explaining that the Debtor would need to obtain an additional $3.1 million to complete the Project, but the Debtor "is still committed to the project and has resolved to make every effort to get the project completed and operating successfully, including meeting all of the principal and interest obligations of the Bonds." Letter at ¶ I, *in* Appellants' Appendix at 139. As of March 31, 1995, the balance of the Project Fund was $369,066.93.

From December 1994 to May 1995, the Contractors submitted properly approved invoices for their work to Bank One Trust. Wells submitted invoices totaling $183,867.80, of which $139,759.46, or 76.01%, was paid by the Trust. Carter–Waters submitted invoices totaling $275,197.97, of which $193,604.85, or 70.3%, was paid by the Trust. No agent or employee of either of the Contractors ever inquired of Bank One Trust, and Bank One Trust never advised either of the Contractors, as to the existence in the Project Fund, or elsewhere, of sufficient funds to pay the Contractors' invoices for construction work related to the Project.

The Debtor ultimately defaulted on its obligation under the Indenture and filed

for relief under Chapter 9 in 1997. The Project has not been completed, and its entire value has recently been appraised at $679,038. Of that amount, only $94,184 was attributable to the amphitheater on which Contractors performed their work. Bank One Trust's claim on behalf of the Bondholders against the Debtor's bankruptcy estate, and secured by a first lien on the Project, is $6,096,459.38. The Contractors Wells and Carter–Waters have asserted claims against the Debtor's bankruptcy estate for $87,476.98 and $155,112.25, respectively.

After the Debtor filed its bankruptcy petition, the Contractors brought an adversary proceeding seeking to equitably subordinate the claim of Bank One Trust to their claims. Specifically, the Contractors assert claims against both the Debtor and Bank One Trust, and they seek an order equitably subordinating the claim of Bank One Trust pursuant to 11 U.S.C. § 510(c).[1] The Complaint alternatively asserts claims based on state law theories of unjust enrichment, third party beneficiary, and misrepresentation, and it seeks a money judgment against Bank One Trust and the Debtor.

Based upon stipulated facts and the evidence presented at trial, the bankruptcy court found that the Contractors failed to establish that Bank One Trust engaged in inequitable conduct, the first element required to prove a claim for equitable subordination. Having found no misconduct, the bankruptcy court ended the inquiry there and dismissed the Contractors' adversary proceeding with prejudice.

## DISCUSSION

### I. Jurisdiction

This Court has jurisdiction to hear timely-filed appeals from "final judgments, order, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), (c)(1); Fed.R.Bankr.P. 8001, 8002; 10th Cir. BAP L.R. 8001–1(a), (d). The bankruptcy court's order is a final order, and the Contractors filed a timely Notice of Appeal. Furthermore, neither party elected to have this appeal heard by the United States District Court for the Eastern District of Oklahoma, thereby consenting to review by this Court. Thus, we have jurisdiction.

### II. Issues on Appeal

The Contractors frame the issue on appeal as "[w]hether the Bankruptcy Court erred in ruling that there was no inequitable conduct on the part of [Appellee] under the applicable test for equitable subordination?" Brief of the Appellants at 1. Broken into its component parts, the issues are whether the court erred in failing to apply the applicable test for determining inequitable misconduct as an element of equitable subordination and whether the court erred in ruling that there was no inequitable conduct on the part of Bank One Trust.

### III. Standard of Review

 "[W]e review the bankruptcy court's legal determinations *de novo*, and its factual findings under the clearly erroneous standard." *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir.1993) (quoting *In*

---

1. State statute prevented the Contractors from filing liens against the property of the municipality. They are therefore unsecured creditors, and they seek a determination that their claims are superior to all Bank One Trust's claims against the Project and are entitled to payment prior to Bank One Trust's secured claims.

488

*re Davidovich,* 901 F.2d 1533, 1536 (10th Cir.1990)). Questions regarding the application of a legal standard are reviewed *de novo.* Moreover, "[o]n the mixed question of whether the facts satisfy the proper legal standard, we conduct a *de novo* review if the question primarily involves the consideration of legal principles and apply the clearly erroneous standard if the question is primarily a factual inquiry." *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 940 F.2d 564, 572 (10th Cir.), *cert. denied sub nom. Pepsico, Inc. v. Uselton,* 502 U.S. 983, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991).

## IV. The Concept of Equitable Subordination

Equitable subordination first gained statutory recognition in bankruptcy with the adoption of the Bankruptcy Code. Section 510(c) provides:

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c). While the Code thus recognizes that claims may be equitably subordinated, it does not articulate any standard by which the doctrine is to be applied. The legislative history indicates that the language of the statute is intended

2. The Tenth Circuit addressed whether equitable subordination pursuant to § 510(c)(1) could be found without a showing of inequitable conduct in *United States v. Reorganized CF*

to "follow existing case law and leave to the courts development of this principle." 124 Cong.Rec. H11,095 (daily ed. September 28, 1987) (remarks of Rep. Edwards); *id.* at S17,412 (daily ed. October 6, 1978) (remarks of Sen. DeConcini).

In establishing the circumstances justifying equitable subordination, courts have been careful to recognize that the doctrine is remedial, not penal, and should be applied "only to the extent necessary to offset the harm which ... creditors suffered as a result of the inequitable conduct." *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.),* 926 F.2d 1458, 1470 (5th Cir.1991). *See also 80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.),* 169 B.R. 832, 840 (Bankr.S.D.N.Y.1994) ("The principle of equitable subordination ... empowers and requires the Bankruptcy Court to tailor the remedy to fit the harm. If the injury or unfair advantage affects only a specific creditor or segment of creditors, the court should subordinate the offending claimant only to the more limited class of claims rather than the claims of all creditors.").

## V. The Test for Equitable Subordination

Building on the premise articulated in *Pepper v. Litton,* 308 U.S. 295, 310, 60 S.Ct. 238, 84 L.Ed. 281 (1939), that "simply the violation of rules of fair play and good conscience" by a claimant justifies equitable subordination of a claim, many courts, including the Tenth Circuit, have developed a three-part test to determine whether equitable subordination is appropriate:

(1) The claimant has engaged in inequitable conduct; [2]

*& I Fabricators (In re CF & I Fabricators),* 53 F.3d 1155, 1158–59 (10th Cir.1995), *rev'd,* 518 U.S. 213, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996). The Tenth Circuit found that,

(2) The conduct has injured creditors or given unfair advantage to the claimant; and

(3) Subordination of the claim is not inconsistent with the Bankruptcy Code.

*Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.),* 990 F.2d 551, 559 (10th Cir.1993).

 ▮ Traditionally, equitable subordination "has been limited to cases involving (1) fraud, illegality or breach of fiduciary duty, (2) undercapitalization, [or] (3) control or use of the debtor as an alter ego for the benefit of the claimant." *Nassau,* 169 B.R. at 838. It is not enough to allege simply that the defendant engaged in "inequitable conduct"; rather, the party seeking equitable subordination must allege conduct that fits within one of these three paradigms. *In re After Six, Inc.,* 177 B.R. 219, 231–32 (Bankr.E.D.Pa.1995).

 ▮ If the claimant is an insider or a fiduciary, the party seeking equitable subordination need only show "unfair" conduct. *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.),* 799 F.2d 726, 731 (11th Cir.1986). However, where non-insider claims are involved, the level of pleading and proof is significantly higher. *Id.* at 731–32. Although courts now agree that equitable subordination can apply to a non-insider creditor, the circumstances are "few and far between." *Kham & Nate's Shoes No. 2, Inc. v. First Bank,* 908 F.2d 1351, 1356 (7th Cir.1990); *accord Waslow*

*v. MNC Commercial Corp. (In re M. Paolella & Sons, Inc.),* 161 B.R. 107, 119 (E.D.Pa.1993) ("Equitable subordination has seldom been invoked, much less successfully so, in cases involving non-insiders and/or non-fiduciaries."), *aff'd,* 37 F.3d 1487 (3d Cir.1994). Importantly, a non-insider creditor "generally owes no fiduciary or contractual duty to the other creditors of a debtor [and therefore] must be found to have engaged in some specific conduct that gave rise to a fiduciary, contractual, or other legally recognized duty to the other creditors before its claim will be equitably subordinated." Andrew De-Natale and Prudence B. Abram, *The Doctrine of Equitable Subordination as Applied to Nonmanagement Creditors,* 40 Bus.Law. 417, 430 (1985) (footnote omitted).

The majority of courts have described the degree of wrongful conduct warranting equitable subordination of a non-insider's claim as "gross and egregious," "tantamount to fraud, misrepresentation, overreaching or spoliation," or "involving moral turpitude." *Nassau,* 169 B.R. at 838–39; *accord Castletons,* 990 F.2d at 559; *Rosania v. Haligas (In re Dry Wall Supply, Inc.),* 111 B.R. 933, 938 (D.Colo.1990).

## VI. Application of the Doctrine of Equitable Subordination to this Case

The first issue on appeal is whether the Court used the appropriate legal standard for determining the first element of an

although "[i]n general, equitable subordination is imposed only when a creditor has committed some kind of wrongful conduct," *id.* at 1158, the Court was willing to subordinate a claim of the Internal Revenue Service arising under 26 U.S.C. § 4971(a) without a showing of misconduct, following *In re Virtual Network Servs. Corp.,* 902 F.2d 1246, 1250 (7th Cir.1990). The Supreme Court reversed on that issue, concluding that where there was no misconduct and the sole basis

for equitable subordination was the very characteristic of the government's claim, it amounted to a categorical reordering of priorities beyond the scope of judicial authority. *Reorganized CF & I,* 518 U.S. at 229, 116 S.Ct. 2106. Therefore, under the limited circumstances of a 26 U.S.C. § 4971 claim, the Supreme Court has rejected equitable subordination of a claim where there was no inequitable conduct.

equitable subordination claim—inequitable conduct. It is undisputed that Bank One Trust is not an insider of the debtor. The Contractors, while recognizing the high standard for non-insider equitable subordination claims, nonetheless argue for the use of a more flexible approach as set forth in *Nassau*. In that case, the court observed that while the majority of courts have defined a heightened standard for the inequitable conduct of non-insiders, "[i]n practice, these definitions provide little guidance; they describe a standard that is rarely if ever met. Cases that enunciate the [heightened] standard uniformally [sic] fail to find conduct that meets and standard, and deny equitable subordination." *Nassau*, 169 B.R. at 839. Hence, *Nassau* reasoned that because courts seldom, if ever, find inequitable conduct based upon the heightened standard, "there is no different or heightened standard to judge a non-insider/non-fiduciary's conduct; there are just fewer traditional grounds available." *Id. Nassau* therefore reformulates the standard for inequitable conduct justifying subordination of non-insider claims as follows:

> [U]nless the creditor has dominated or controlled the debtor to gain an unfair advantage, his claim will be subordinated, based upon inequitable conduct, only if the claimant has committed some breach of an existing, legally recognized duty arising under contract, tort or other area of law. In commercial cases, the proponent must demonstrate substantial breach of contract and advantage-taking by the creditor. In the absence of a contractual breach, the proponent must demonstrate fraud, misrepresentation,

estoppel or similar conduct that justifies the intervention of equity.

*Id.* at 840 (citation omitted).

Drawing upon *Nassau's* expanded definition of inequitable conduct, the Contractors argue that the Bank One Trust's claim must be subordinated based either on equitable estoppel or unjust enrichment. Specifically, they assert that (1) Bank One Trust made express or implied representations that the Contractors would be paid; (2) Bank One Trust knew the Contractors were improving the Project under the misapprehension that they would be paid, but nevertheless remained silent; and (3) Bank One Trust, with knowledge that the project was doomed, nevertheless received the benefit of the improvements made by the Contractors and has been unjustly enriched thereby.

 Because we decline to adopt the standard enunciated in *Nassau,* we likewise refuse to consider the Contractors' arguments based upon the doctrines of equitable estoppel or unjust enrichment.[3] The Tenth Circuit has unequivocally held in *Castletons* that where a creditor has no fiduciary obligation to its debtor or to other creditors, one seeking to equitably subordinate that creditor's claim must " 'demonstrate even more egregious conduct ... [such as] "gross misconduct, tantamount to fraud, misrepresentation, overreaching or spoliation." ' " *Castletons,* 990 F.2d at 559 (quoting *In re Dry Wall Supply, Inc.,* 111 B.R. 933, 938 (D.Colo.1990) (quoting *In re Burner,* 109 B.R. 216, 228 (Bankr. W.D.Tex.1989))); *see also Figgie Acceptance Corp. v. City Roofing Co. (In re 5000 Skelly Corp.),* No. 93–5178, 1994 WL 232244, at *2 (10th Cir. June 1, 1994) (remanding case to allow the bankruptcy

---

**3.** Even if traditional doctrines of equity could form the predicate for a finding of equitable subordination, and we considered the issues not reached by the bankruptcy court, it appears from our record that the Contractors fell well short of proving the requisite elements at trial.

court to make factual findings "necessary for a decision on whether appellant's claim should be subordinated under *In re Castletons.*"). As such, the bankruptcy court did not err in applying the heightened standard to the conduct of Bank One Trust. Indeed, there simply is no allegation or evidence that Bank One Trust committed gross misconduct when it did not inform the Contractors of the financial difficulties facing the Project.

The second issue raised on appeal by the Contractors is that the bankruptcy court erred in finding that Bank One Trust did not engage in *any* form of misconduct in fulfilling its duties under the Indenture. The record in this case amply supports the bankruptcy court's factual finding that:

> Bank [One Trust] performed its duties under the Indenture. It made no representations to the Plaintiffs. It was not a party to the contracts between Plaintiffs and the Authority. It owed no fiduciary duty to the Plaintiffs. It had no contact with the Plaintiffs, other than the payment of a portion of the amounts owed to Plaintiffs. The mere fact that the Trustee paid the early requisitions upon their presentation is not tantamount to a representation that monies would be available for payment of any and all such requisitions.

Memorandum Opinion at 10, *in* Appellants' Appendix at 38. Accordingly, we find no clear error in the bankruptcy court conclusion that Bank committed no misconduct in administering the terms of the Indenture.

### CONCLUSION

For the reasons set forth above, the bankruptcy court's Judgment is AFFIRMED.