In re PHASE–I MOLECULAR
TOXICOLOGY, INC.,
Debtor.

Spencer Farr, Ph.D and Suzanne Roubidoux for themselves and all creditors of the estate, Plaintiffs,

v.

Phase–I Molecular Toxicology, Inc., TD Javelin Capital Fund II, L.P., and Tullis–Dickerson Capital Focus II, L.P., Defendants.

Bankruptcy No. 11–02–15145 MS.
Adversary No. 02–1269 M.

United States Bankruptcy Court,
D. New Mexico.

Dec. 19, 2002.

James A. Askew, Albuquerque, NM, for Plaintiffs.

Paul M. Fish, Albuquerque, NM, for Tullis–Dickerson.

Robert H. Jacobvitz, Albuquerque, NM, for Phase–I Molecular Toxicology, Inc.

## *MEMORANDUM OPINION*

MARK B. MCFEELEY, Chief Judge.

THIS MATTER came before the Court on the Motion for Summary Judgment ("Motion") filed by Defendants TD Javelin Capital Fund II, L.P. ("TD") and Tullis–Dickerson Capital Focus II, L.P. ("Tullis"), or jointly, ("Tullis–Dickerson"), by and through their attorneys of record, Modrall, Sperling, Roehl, Harris & Sisk, P.A. (Paul M. Fish). Plaintiffs' Complaint for Declaratory Judgment and Equitable Subordination Under § 510(c) ("Complaint") filed by Spencer Farr Ph.D and Susanne Roubidoux, for themselves and all creditors of the estate, by and through their attorneys of record, Rodey, Dickason, Sloan, Akin & Robb, P.A. (James A. Askew), seeks a determination that certain secured loans granted by Tullis–Dickerson to the Debtor should be re-characterized as capital contributions. Alternatively, Plaintiffs seek to equitably subordinate Tullis–Dickerson's claim pursuant to 11 U.S.C. § 510(c).

At the final hearing on confirmation of the Debtor's plan of reorganization, held October 31, Plaintiffs and Tullis–Dickerson offered evidence and argument on the issue of equitable subordination of Tullis–Dickerson's claim, which the Court will take into consideration in ruling on Tullis–Dickerson's Motion for Summary Judgment.[1] After considering the pleadings, the Motion and supporting memorandum, the response [2] thereto, and the evidence and argument previously offered at the final hearing on confirmation, and being otherwise fully informed, the Court finds that summary judgment is proper as a matter of law. Plaintiffs' Response also seeks a continuance pursuant to Rule 7056(f) to allow additional time for Plaintiffs to respond to the Motion. The Court denies this request.

## DISCUSSION

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P., as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7056, Fed. R. Bankr.P. The movant bears the initial burden of showing an absence of a genuine issue of material fact; however, "the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *In re Harris,* 209 B.R. 990, 995 (10th Cir. BAP 1997) (citations omitted); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (finding no requirement in Rule 56 that movant support its motion with materials negating opponent's claim). Once this initial burden is met, the non-movant may not rely solely upon the allegations contained in the pleadings, but must offer evidence beyond the scope of the pleadings to show the presence of genuine issues of material fact sufficient for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *In re Harris,* 209 B.R. 990, 995 (10th Cir. BAP 1997).

---

1. At the final hearing on confirmation of Debtor's proposed plan of reorganization, counsel for Plaintiffs adopted the testimony of Richard J. Miller for purposes of Plaintiffs' complaint for equitable subordination of Tullis–Dickersons' claim pursuant to 11 U.S.C. § 510(c).

2. *See* Plaintiffs' Response to Motion by Defendants TD Javelin Capital Fund II, L.P. and Tullis–Dickerson Capital Focus II, L.P. for Summary Judgment ("Response"), filed December 16, 2002.

The following facts are not in dispute:

1. TD and Tullis are shareholders of the Debtor and claim to be creditors in the Debtor's bankruptcy. *See* Complaint, ¶ 7.; Answer, ¶ 1.

2. On or about June 18, 2002, Debtor executed and delivered to TD a promissory note in the principal amount of $150,000.00 plus interest at the rate of 10% per annum, payable on demand. *See* Complaint, ¶ 12; Answer, ¶ 1.

3. On or about June 18, 2002, Debtor executed and delivered to Tullis a promissory note in the principal amount of $150,000.00 plus interest at the rate of 10% per annum, payable on demand. *See* Complaint, ¶ 14; Answer, ¶ 1.

4. TD and Tullis each advanced $150,000.00 to the Debtor. *See* Complaint, ¶¶ 11. and 13; Answer ¶ 3.

5. On or about June 18, 2002, as security for the promissory notes, Tullis–Dickerson obtained a security interest in all or substantially all of the Debtor's assets, described generally as accounts, intellectual property and related property rights, commercial tort claims, stock in subsidiary, deposit accounts, contract rights, equipment, goods, inventory, general intangibles, fixtures, and other assets, as described more fully in a Security Agreement, Patent and Trademark Security Agreement, and Stock Pledge Agreement entered into by the Debtor, TD, and Tullis. *See* Complaint, ¶ 15; Answer, ¶ 1.

6. Tullis–Dickerson filed a financing statement with the Secretary of State of Delaware to perfect the security interest claimed by TD and Tullis in the Debtor's property. *See* Complaint, ¶ 16; Answer, ¶ 1.

7. At the time Tullis–Dickerson made the advances and the Debtor executed the promissory notes, the Debtor could not have borrowed a similar amount of money from an informed outside source. *See* Complaint, ¶ 18; Answer, ¶ 1. Tullis–Dickerson was aware that the Debtor was unable to obtain funding from another source at the time Tullis–Dickerson made the advances. *See* Complaint, ¶ 31; Answer, ¶ 1.

8. Prior to the granting of the loans at issue in this adversary proceeding, Tullis–Dickerson, and other Tullis–Dickerson entities had already invested over ten million dollars as stockholders of the Debtor. *See* Exhibit 6, Phase I Molecular Toxicology Capitalization as of 4/19/02, attached to the Memorandum Brief in Support of Motion for Summary Judgment ("Memorandum Brief"), and attached as Exhibit C to Debtor's Second Disclosure Statement.

9. The Debtor's then Chairman of the Board, Mr. Robert Ivy, and the Debtor's Chief Executive Officer, Vince Kazmier, who are not investors or employees of Tullis–Dickerson, initially approached Tullis–Dickerson with a request for the $300,000.00 loan. (Uncontroverted testimony of Richard J. Miller, an independent consultant for Tullis–Dickerson, admitted into evidence at the final hearing on confirmation of the Debtor's proposed plan); *See* Exhibit C, attached to the Motion.

10. When the loan request was made, the Debtor anticipated selling assets of its Belgian subsidiary and other assets which would generate significant cash sometime in early fall. (Uncontroverted testimony of Richard J. Miller admitted into evidence at the final hearing on confirmation of the Debtor's proposed plan); *See* Exhibit C, attached to Motion.

11. Tullis–Dickerson was initially reluctant to grant the loans. (Uncontroverted testimony of Richard J. Miller admitted into evidence at the final hearing on confirmation of the Debtor's proposed plan); *See* Exhibit C, attached to the Motion.

12. Mr. Lyle Hohnke, a principal of Tullis–Dickerson, is one of two members of the Board of Directors of the Debtor. *See* Debtor's Second Disclosure Statement.

13. No payments have been made on the two promissory notes. *See* Complaint, ¶ 20; Answer, ¶ 1.

■ Plaintiffs initially assert that the advances from TD and Tullis should be treated as capital contributions and, therefore, subordinated to all other allowed claims. Alternatively, if the Court determines that the advances constitute loans, Plaintiffs urge equitable subordination pursuant to 11 U.S.C. § 510(c). Recharacterization of a loan as a capital contribution and equitable subordination are separate concepts, though some factors are relevant to both inquiries. *See In re Autostyle Plastics, Inc.*, 269 F.3d 726, 748–749 (6th Cir.2001) (explaining the differences between recharacterization and equitable subordination, and noting that undercapitalization is relevant to both inquiries); *United States v. Colorado Invesco, Inc.*, 902 F.Supp. 1339, 1341 (D.Colo.1995) (noting that plaintiffs should first assert that the loans are capital contributions, and then, if they are determined to be loans, request equitable subordination on principles of fairness.). The recharacterization analysis determines whether a debt exists, whereas equitable subordination determines whether a legitimate debt should be subordinated due to a creditor's inequitable conduct. *Autostyle*, 269 F.3d at 748. Thus, the starting point in considering a request for subordination is to examine the nature of the transaction. *See Sinclair v. Barr (In re Mid–Town Produce Terminal, Inc.)*, 599 F.2d 389, 393 (10th Cir.1979) ("the usual procedure is to first determine whether the transaction was a contribution to capital rather than a loan.").

■ In determining whether a loan should be re-characterized as a contribution to capital, relevant factors include:

(1) the names given to the certificates evidencing the indebtedness;

(2) the presence or absence of a fixed maturity date;

(3) the source of payments;

(4) the right to enforce payment of principal and interest;

(5) participation in management flowing as a result;

(6) the status of the contribution in relation to regular corporate creditors;

(7) the intent of the parties;

(8) 'thin' or inadequate capitalization;

(9) identity of interest between creditor and stockholder;

(10) source of interest payments;

(11) the ability of the corporation to obtain loans from outside lending institutions;

(12) the extent to which the advance was used to acquire capital assets; and

(13) the failure of the debtor to repay on the due date or to seek postponement.

*In re Cold Harbor Associates*, 204 B.R. 904, 915 (Bankr.E.D.Va.1997) (quoting *Celotex Corp. v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.)*, 176 B.R. 223, 248 (M.D.Fla. 1994)).

The factors should be considered in light of the circumstances surrounding each case, with no one factor given controlling or decisive weight. *Id.; see also, In re Autostyle Plastics, Inc.*, 269 F.3d 726, 750 (6th Cir.2001) (applying similar factors enunciated in *Roth Steel Tube Co. v. Comm'r of Internal Revenue*, 800 F.2d 625 (6th Cir.1986), and noting that no one factor is controlling). There are sufficient

undisputed facts to establish that the transaction at issue is a loan, and not a capital contribution. It is undisputed that the transaction is evidenced by instruments entitled Senior Secured Demand Bridge Note, and that the promissory notes and the security agreements were entered into at or near the time of the advances. The Debtor also pledged significant assets as security for the notes, another indicator that the transaction is a loan. Although the notes are payable on demand and, therefore, contain no fixed maturity date, they do include a rate of interest.

It is not clear from the undisputed facts what was the intended source of payment for interest and principal, although the uncontroverted testimony of Rick Miller admitted into evidence at the final hearing on confirmation of Debtor's proposed plan of reorganization indicated that the purpose of the loan was to serve as a "bridge" loan to cover the Debtor's operating expenses pending the closing of the anticipated sale of assets of its Belgian subsidiary. This weighs in favor of characterizing the transaction as a loan, since the source of intended repayment when the advance was made was not dependant solely on the future success of the Debtor's business. *See Autostyle*, 269 F.3d at 751 ("If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution.") (citation omitted).

The promissory notes contain an enforcement provision that requires the Debtor to pay for all "reasonable out-of-pocket expenses" including attorneys' fees associated with the enforcement of the notes. This fact also indicates that the transaction was intended as a loan.

Another *Cold Harbor* factor, "identity of interest between creditor and stockholder" considers whether "stockholders make ad-vances in proportion to their respective stock ownership." *Autostyle*, 269 F.3d at 751 (citing *Roth Steel Tube Co. v. Comm'r of Internal Revenue*, 800 F.2d 625, 630 (6th Cir.1986)). The $300,000.00 was advanced at a time when the Debtor needed cash to cover its operating expenses until the closing of the anticipated sale of its Belgian subsidiary. (Testimony of Richard J. Miller). There is no evidence that other existing shareholders made contributions to the loan proportionate to their respective stock ownership. This factor indicates that the transaction was a loan.

It is undisputed that the Debtor was unable to obtain loans from other lenders at the time of the transaction. This fact weighs in favor of treating the transaction as a capital contribution, rather than a loan. In addition, Plaintiffs allege that the Debtor was undercapitalized at the time of the transaction, another factor supporting treatment as a capital contribution. *See In re Autostyle Plastics, Inc.*, 269 F.3d 726, 751 (6th Cir.2001) (capitalization should be assessed not only at initial capitalization, but also at the time of the transfer); *see also, United States v. Colorado Invesco, Inc.*, 902 F.Supp. 1339, 1342 (D.Colo.1995) (Noting that the theory of undercapitalization derived from *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) "looks either to the initial amount of capital in a corporation or its financial status at the time the loans were made.").

■ Plaintiffs urge that the Defendant's admission that Debtor could not obtain a loan from other informed lenders and Debtor's alleged undercapitalization at the time of the transaction is sufficient to warrant recharacterization of the advances as capital contributions, citing *In re N & D Properties, Inc.*, 799 F.2d 726 (11th Cir. 1986) and *Diasonics, Inc. v. Ingalls*, 121 B.R. 626, 631 (Bankr.N.D.Fla.1990) (con-

firming that the standard enunciated in *Diasonics* is the appropriate standard in the Eleventh Circuit). However, for purposes of recharacterizing an advance as a capital contribution, rather than a loan, the undercapitalization factor considered in *Diasonics* and *N & D Properties* is the initial capitalization. *Diasonics*, 121 B.R. at 631 ("It is the trustee's burden to show that the corporation was initially undercapitalized ..."); *N & D Properties*, 799 F.2d at 733 ("Shareholder loans may be deemed capital contributions ... where the trustee prove initial undercapitalization ..."). Here, there is no dispute that the *initial* capitalization of the Debtor was significant. *See* Exhibit 6 to Motion. Whether the Debtor was undercapitalized at the time of the transaction, though relevant, is not determinative. *See Hyperion Enterprises, Inc.*, 158 B.R. 555, (D.R.I. 1993) (rejecting argument that undercapitalization justifies recharacterization of debt in favor of using multi-factor approach).

 Both *Diasonics* and *N & D Properties* hold that proof of Debtor's inability to obtain a loan from any other disinterested lender is sufficient independent grounds for characterizing an advance as a capital contribution. *N & D Properties*, 799 F.2d at 733; *Diasonics*, 121 B.R. at 631. Tullis–Dickerson does not dispute that Debtor was unable to obtain loans from any other lender, and that it was aware of that when it made the advance at issue here. However, the Court finds that the appropriate test for determining whether recharacterization is appropriate requires consideration of several factors, none of which is controlling. *Autostyle*, 269 F.3d at 750 (citation omitted). While the fact that the Debtor could not obtain a loan from any other disinterested lender weighs in favor of treating the advance as a capital contribution, by itself it does not tip the scale.

There are no other undisputed facts before the Court relevant to the remaining *Cold Harbor* factors. For example, there is no allegation that Tullis–Dickerson was allowed to participate in management of the Debtor flowing from this transaction, which would be more indicative of a capital contribution. Nor is there any indication that the advanced funds were used to acquire capital assets.

After considering the undisputed facts in light of the relevant *Cold Harbor* factors, the Court finds that the transaction constitutes a loan. Plaintiffs allege insufficient facts to support a claim for recharacterization of the transaction as a capital contribution.

 Having determined that the transaction constitutes a loan, the Court will now consider the issue of equitable subordination. Pursuant to 11 U.S.C. § 510(c), all or a portion of a claim may be subordinated to other claims under principles of equitable subordination. That section provides:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

The objecting party bears the initial burden of showing that grounds exist for equi-

table subordination of a creditor's claim.[3] *In re Fabricators, Inc.,* 926 F.2d 1458, 1465 (5th Cir.1991) (citing *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 701 (5th Cir.1977)). The Tenth Circuit applies the following three-prong test to determine whether equitable subordination is appropriate:

1. The claimant has engaged in inequitable conduct;

2. The conduct has injured creditors or given unfair advantage to the claimant; and

3. Subordination of the claim is not inconsistent with the Bankruptcy Code.

*In re Castletons, Inc.,* 990 F.2d 551, 559 (10th Cir.1993) (citing *In re 5000 Skelly Corp.,* 142 B.R. 442, 446 (Bankr.N.D.Okla. 1992)).

■ Even upon a showing of all three factors, equitable subordination is not *required,* but merely *permitted. Autostyle,* 269 F.3d at 744 (citation omitted); *In re Magnolia Gas Co., L.L.C.,* 255 B.R. 900, 924 (Bankr.W.D.Okla.2000) (citing *Fabricators,* 926 F.2d at 1465 n. 9). What suffices as inequitable conduct sufficient to justify equitable subordination of a claim generally requires a showing of " '(1) fraud, illegality or breach of fiduciary duty, (2) undercapitalization, [or] (3) control or use of the debtor as an alter ego for the benefit of a claimant.' " *In re Eufaula Industrial Authority,* 266 B.R. 483, 489

(10th Cir. BAP 2001) (quoting *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.),* 169 B.R. 832, 838 (Bankr.S.D.N.Y.1994)). It is insufficient for the objecting party simply to allege that the claimant engaged in "inequitable conduct," specific facts must be alleged describing the type of misconduct that fits within these categories. *Id.* (citing *In re After Six, Inc.,* 177 B.R. 219, 231–232 (Bankr.E.D.Pa.1995)).

■ When the creditor is an insider, the transaction should be given greater scrutiny. *In re Mid–Town Produce Terminal, Inc.,* 599 F.2d 389, 392 (10th Cir. 1979) ("Because there is incentive and opportunity to take advantage, dominant shareholders and other insiders' loans in a bankruptcy situation are subject to special scrutiny.") (citing *Pepper v. Litton,* 308 U.S. 295, 306–307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939)); *In re Fabricators, Inc.,* 926 F.2d 1458, 1465 (5th Cir.1991) ("A claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts.") (citations omitted); *Eufaula,* 266 B.R. 483, 489 ("If the claimant is an insider or a fiduciary, the party seeking equitable subordination need only show 'unfair' conduct.") (citing *Estes v. N & D Properties, Inc. (In re N & D Properties, Inc.),* 799 F.2d 726, 731 (11th Cir.1986)). Closer scrutiny for insiders is warranted " 'because such parties usually have greater opportunities for such inequi-

---

**3.** Tullis–Dickerson's Memorandum questions whether Plaintiffs have standing to pursue a cause of action under 11 U.S.C. § 510(c), given that the Court has already determined as part of Adversary Proceeding No. 02–1212 M that Dr. Farr's claim is subordinated to that of common stock. The Court disagrees. Even following the Court's ruling in Adversary Proceeding No. 02–1212 M, Dr. Farr may still have a general unsecured claim against the bankruptcy estate. Unsecured creditors, and even investors, can have stand-

ing to seek equitable subordination pursuant to 11 U.S.C. § 510(c). *See In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir. 1990) (finding that unsecured creditors had standing to bring suit for equitable subordination under 11 U.S.C. § 510(c)); *ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.),* 210 B.R. 508, 513–514 (Bankr. S.D.N.Y.1997) (concluding that investors had standing to seek equitable subordination even though their claims had been subordinated).

table conduct, not because the relationship itself is somehow grounds for subordination.'" *Fabricators,* 926 F.2d at 1465 (quoting *Wilson v. Huffman (In re Missionary Baptist Foundation of America),* 818 F.2d 1135, 1144 n. 8 (5th Cir.1987)).

"Insider" is defined in 11 U.S.C. § 101(31), which relevant portion provides:

> (B) if the debtor is a corporation,
>> (i) director of the debtor;
>> (ii) officer of the debtor;
>> (iii) person in control of the debtor;
>> (iv) partnership in which the debtor is a general partner;
>> (v) general partner of the debtor; or
>> (vi) relative or a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B).

"Shareholder of the debtor" is not one of the enumerated categories of insiders as defined by the bankruptcy code; however, the list of insider relationships contained in 11 U.S.C. § 101(31) is not exhaustive. *See In re Armstrong,* 231 B.R. 746, 749 (Bankr.E.D.Ark.1999); *In re Century Investment Fund VII Ltd. Partnership,* 96 B.R. 884, 892 (Bankr.E.D.Wis.1989). A shareholder who exercises control over the debtor can be considered an insider. *See Fabricators,* 926 F.2d at 1465 (noting that control of the debtor is sufficient for insider status, even absent other formal relationships, such as shareholder status).

■ The undisputed facts show that, at the time of the transaction, Tullis–Dickerson already held a significant percentage of the outstanding shares of the Debtor. *See* Exhibit 6 to Memorandum Brief. And a principal of Tullis–Dickerson was a member of the Debtor's board of directors. *See* Debtor's Disclosure Statement. These factors are sufficient to confer "insider" status on Tullis–Dickerson. However, in-sider status by itself is insufficient grounds for equitable subordination. *Mid–Town Produce,* 599 F.2d at 392; *Fabricators,* 926 F.2d at 1467; *Magnolia Gas,* 255 B.R. at 924 (insider status alone is insufficient evidence for subordination of a creditor's claim; focus must be on whether insider's conduct unfairly injured creditors or gave the insider an unfair advantage) (citations omitted). Moreover, dominant shareholders should not be discouraged from attempting to salvage a business by granting a loan for fear that their insider status will automatically result in equitable subordination. *Mid–Town Produce,* 599 F.2d at 392; *Autostyle,* 269 F.3d 726, 745 ("Claims involving insiders 'are not automatically subordinated' since 'insiders are the persons most interested in restoring and reviving the debtor, and such bona fide efforts should be viewed with approval.'") (quoting *In re Hyperion Enterprises, Inc.,* 158 B.R. 555, 563 (D.R.I.1993)). As stated by the Tenth Circuit in *Mid–Town Produce:*

> We are unwilling to find a dominant shareholder may not loan money to a corporation in which he is the principal owner and himself become a secured creditor. To hold the debt may be subordinated on that basis alone would discourage owners from trying to salvage a business, and require all contributions to be made in the form of equity capital.

*Mid–Town Produce,* 599 F.2d at 392.

■ In order to equitably subordinate an insider's secured loan, "the creditor-insider must actually use its power to control to its own advantage or to the other creditor's detriment." *Fabricators,* 926 F.2d at 1467 (citation omitted). However, the alleged misconduct need not relate directly to the transaction at issue. *Id.* (citing *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 700 (5th Cir. 1977)).

In this case, the uncontroverted testimony of Richard J. Miller is that representatives of the Debtor approached Tullis–Dickerson with the request for a bridge loan, and that Tullis–Dickerson, having already made significant capital contributions to the Debtor, was reluctant to advance additional funds. Tullis–Dickerson agreed to loan additional funds only on a secured basis. These facts are insufficient to show that Tullis–Dickerson acted inequitably by using its insider status to the detriment of other creditors.

Undercapitalization is another relevant factor to consider when determining inequitable conduct. *See In re Eufaula Industrial Authority,* 266 B.R. 483, 489 (10th Cir. BAP 2001) (citation omitted). Plaintiffs assert that the Debtor did not have adequate capitalization to support the Debtor's operations at the time of the transaction. Complaint, ¶ 17. At least one court has suggested that insider-status combined with an undercapitalized debtor *may* be sufficient grounds for equitable subordination. *See In re Herby's Foods, Inc.,* 2 F.3d 128, 132–133 (5th Cir.1993). However, undercapitalization alone is insufficient. *Autostyle,* 269 F.3d at 747 ("Undercapitalization *alone* is insufficient to justify the subordination of insider claims, however.") (emphasis in original); *Fabricators,* 926 F.2d at 1469. In addition to undercapitalization, the objecting party must show evidence of other, additional, inequitable conduct to justify equitable subordination. *Autostyle,* 269 F.3d at 747 (quoting *In re Hyperion Enterprises, Inc.,* 158 B.R. 555, 563 (D.R.I.1993)); *In re Mr. R's Prepared Foods, Inc.,* 251 B.R. 24, 30 (Bankr.D.Conn.2000) ("While an insider loan to an insolvent corporation may be indicative of undercapitalization, 'undercapitalization alone generally is insufficient to justify equitable subordination without evidence of additional inequitable con-

duct.' ") (quoting *In re Herby's Foods, Inc.,* 2 F.3d at 132).

Plaintiffs assert that Defendants acted inequitably by obtaining a security interest in all of the Debtor's assets at a time when Defendants knew the Debtor was insolvent and could not obtain a loan from any other lender. The Court finds that this conduct is insufficient to warrant subordination of Defendants' claim. Historically, Defendants had already made substantial capital contributions to the Debtor. At the time the bridge loans were granted, Debtor expected to receive significant funds from the sale of assets from its Belgian subsidiary. That Defendants would ask for collateral to secure an additional advance is not unreasonable, and fails to rise to the level of inequitable conduct necessary to subordinate their claim.

" 'Equitable subordination is an unusual remedy which should be applied in limited circumstances.' " *Autostyle,* 269 F.3d at 745 (quoting *In re Fabricators,* 926 F.2d at 1464). Its purpose " 'is to distinguish between the unilateral remedies that a creditor may properly enforce pursuant to its agreements with the debtor and other inequitable conduct such as fraud, misrepresentation, or the exercise of such total control over the debtor as to have essentially replaced its decision-making capacity with that of the lender.' " *In re Castletons, Inc.,* 990 F.2d 551, 559 (10th Cir.1993) (quoting *In re Clark Pipe & Supply Co.,* 893 F.2d 693, 701 (5th Cir. 1990)). Moreover, equitable subordination "is remedial, not penal, in nature and should be applied only to the extent necessary to offset the specific harm that the creditors suffered on account of the inequitable conduct." *Magnolia Gas,* 255 B.R. at 924; *see also, In re Fabricators,* 926 F.2d 1458, 1464 (5th Cir.1991).

Finally, the Complaint alleges that Tullis–Dickerson dominated the Debtor and

controlled the Debtor's use of its funds such that the Debtor exercised no independent discretion or decision making. *See* Complaint, ¶¶ 33 and 34. Plaintiffs have offered no evidence to support these allegations in response to Tullis–Dickerson's Motion. The uncontroverted testimony of Richard J. Miller is that he served as a consultant to Tullis–Dickerson and made suggestions to the Debtor, but that the Debtor was free to disregard his suggestions, and that independent management made all decisions on behalf of the Debtor. Absent evidence in support of Plaintiff's allegations which would create a question of fact, summary judgment is appropriate as a matter of law. Because the Court finds that Plaintiffs have failed to present evidence that Defendants engaged in inequitable conduct, it need not address the remaining prongs of the three-part test for equitable subordination.

Based on the foregoing, the Court concludes that Tullis–Dickerson's Motion should be granted. An appropriate order will be entered.