**In re U.S. MEDICAL, INC., Debtor.**

**Carl Zeiss Meditec AG, formerly known as Asclepion–Meditec AG, Defendant–Appellant,**

**v.**

**Glen R. Anstine, Trustee, Plaintiff–Appellee.**

**BAP No. CO–06–081.**
**Bankruptcy No. 02–19607 ABC.**
**Adversary No. 04–01647 ABC.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 12, 2007.

---

30. *Schlosser v. DaimlerChrysler Servs., NA (In re Wilson),* 2006 Bankr.LEXIS 1351, at *5–6    (Bankr.D.Colo. January 3, 2006).

Mark F. Bell of Bieging Shapiro & Burrus, LLP, Denver, Colorado, for Defendant–Appellant.

Philip A. Pearlman of Pearlman & Dalton, P.C., Denver, Colorado, for Plaintiff–Appellee.

Before CLARK, CORNISH, and THURMAN, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

Appellant-creditor Carl Zeiss Meditec AG ("Creditor") appeals a judgment of the United States Bankruptcy Court for the District of Colorado in favor of appellee-trustee Glen R. Anstine ("Trustee") in this Chapter 7 adversary action. The bankruptcy court determined that Creditor was a nonstatutory insider with respect to debtor, U.S. Medical, Inc. ("Debtor"), and therefore allowed Trustee to avoid certain preferential transfers from Debtor to Creditor pursuant to 11 U.S.C. §§ 547(b)(4)(B) and 550(a)(1).[1]

## BACKGROUND

Debtor filed a voluntary Chapter 7 petition on June 24, 2002. On June 18, 2004, Trustee commenced this adversary proceeding against Creditor, claiming it was an insider with respect to Debtor and seeking to avoid transfers from Debtor to Creditor pursuant to § 547(b)(4)(B) and § 550(a)(1). The bankruptcy court granted the parties' request for bifurcation on the insider issue, and on March 7, 2006, held a trial on that issue alone. The bankruptcy court made its oral ruling on March 20, 2006, finding Creditor to be a nonstatutory insider with respect to Debtor.[2] Creditor filed a motion for leave to appeal this issue on an interlocutory basis with the United States District Court for the District of Colorado. That motion was denied.

The adversary proceeding continued when the parties filed a Stipulation and Joint Motion for Final Judgment ("Stipulation"). The parties stipulated to a judgment in the amount of $147,307 in favor of Trustee with respect to insider preferential transfers, if Creditor were in fact an insider. But Creditor denied that the insider element of § 547(b)(4)(B) had been established. The bankruptcy court then directed the Trustee to file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019. The motion was granted, and judgment entered in favor of Trustee on August 7, 2006.[3] Creditor filed this timely appeal.

## JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

---

1. Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

2. The facts detailing the relationship between Debtor and Creditor will be developed in the Analysis section below.

3. In entering the Stipulation and allowing judgment to be entered, Creditor waived its ordinary course of business defense. Nevertheless, even Trustee concedes that a finding that a transfer was made outside the ordinary course of business is not tantamount to a finding that the transfer was somehow less than an arm's length transaction. *See Appellee's Brief* at 19.

Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). In this case, the judgment of the bankruptcy court terminated the adversary proceeding at issue. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.

**STANDARD OF REVIEW**

Whether Creditor is a nonstatutory insider with respect to Debtor would ordinarily be a question of fact. However, in this case, the facts are not really in dispute. Therefore, this Court must review the bankruptcy court's application of the law to the facts to determine insider status, or a mixed question of law and fact. *In re Krehl*, 86 F.3d 737, 742 (7th Cir. 1996); *In re Holloway*, 955 F.2d 1008, 1014 (5th Cir.1992). We review mixed questions consisting primarily of legal conclusions drawn from facts *de novo*. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir.1997) (citing *Clark v. Sec. Pac. Bus. Credit, Inc. (In re Wes Dor, Inc.)*, 996 F.2d 237, 241 (10th Cir.1993)). *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**4.** However, since the parties have already stipulated to a judgment amount of $147,307, our only responsibility on appeal is to deter-

**ANALYSIS**

The underlying issue in this case is whether transfers made by Debtor to Creditor in late 2001 and early 2002 may be set aside by Trustee as preferential transfers.[4] When a transfer is made by a debtor to an "insider," pursuant to § 547, the preferential transfer period is one year rather than ninety days:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
>    . . . .
>
>    (4) made—
>
>    . . . .
>
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an *insider[.]*

§ 547(b)(4)(B) (emphasis added). The reason for the extended preference period is that insiders are far more likely to be given preferential treatment in debt repayment than creditors who deal with the debtor at arm's length, and insiders may even have the power to influence or control the date of filing bankruptcy in relation to the dates of repayment to themselves. *Hirsch v. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 260 (Bankr.S.D.N.Y. 2002).

*Definition of Insider*

Pursuant to § 101(31), a statutory insider includes:

> (B) if the debtor is a corporation—
>
>    (i) director of the debtor;
>
>    (ii) officer of the debtor;
>
>    (iii) person in control of the debtor;

mine whether Creditor was in fact a nonstatutory insider for preferential transfer purposes.

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative· of a general partner director, officer, or person in control of the debtor[.]

§ 101(31)(B). However, because the statutory list is introduced by the phrase "[t]he term 'insider' includes," courts have determined that the list of persons who are insiders is non-exclusive. Therefore, courts have developed the concept of a "nonstatutory insider." *See, e.g., In re Krehl*, 86 F.3d 737, 741 (7th Cir.1996) ("By virtue of the nonlimiting term 'includes,' the [statutory] definition is intended to be illustrative rather than exhaustive."); *Farr v. Phase–I Molecular Toxicology, Inc. (In re Phase–I Molecular Toxicology, Inc.)*, 287 B.R. 571, 580 (Bankr.D.N.M.2002) ("[T]he list of insider relationships contained in 11 U.S.C. § 101(31) is not exhaustive."). Accordingly, a person or entity may be deemed to be an insider even if its relationship with the debtor is not one specified by Congress in § 101(31).

The Ninth Circuit Bankruptcy Appellate Panel's ("Ninth Circuit BAP") opinion in *In re Friedman* is often cited for its discussion of nonstatutory insider status:

> While the respective insider definitions do not attempt or purport to be all inclusive, it may be fairly said that each definition is based on either one of two relational classifications. First the Code assigns insider status to entities or relatives of the debtor, or of persons in control of a related entity, whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor. Second, insider status may be based on a professional or business relationship with the debtor, in addition to the Code's *per se* classifications, where such relationship compels the

conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties.

The case law that has developed also indicates that not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship. . . .

[S]o long as the parties transact their business at arm's length, such circumstances do not necessarily give rise to insider status even though there was some degree of personal relationship with the debtor. It is unlikely that Congress intended that complex business relationships existing over a period of time, attended by some personal involvement but without control by the creditor over the debtor's business, would subject such creditor to insider status.

*In re Friedman*, 126 B.R. 63, 69–70 (9th Cir. BAP 1991) (footnote omitted). In *Friedman*, the court applied the above analysis and found that creditors,

> primarily as brokers, facilitated [debtor's] real estate investments for a period of five years. In the course of a large number of transactions, the interaction among the parties was necessarily accompanied by trust and personal regard. But nothing in the record shows that the basic relationship of broker and principal was transcended.

*Id.* at 72. Therefore, the court affirmed the lower court's finding that the real estate brokers were not insiders with respect to the debtor. *Id.* at 72–73

Another widely cited analysis for determining nonstatutory insider status is that of the Fifth Circuit Court of Appeals in *In re Holloway*. In that case, the court said

that in making the determination whether insider status exists, courts have focused on two factors: "(1) the closeness of the relationship between the transferee and the debtor; and (2) whether the transactions between the transferee and the debtor were conducted at arm's length." *In re Holloway,* 955 F.2d 1008, 1011 (5th Cir. 1992). In *Holloway,* the court found that both factors were present, and held that an ex-wife was an insider. *Id.* at 1011–12, 1015. Although the bankruptcy court in the present case did not specifically cite to *Holloway* in its oral ruling, it nevertheless relied on the two factor nonstatutory insider test set forth in that decision.

*Relationship between Debtor and Creditor*

In 1996, Debtor became engaged in the business of selling new and used medical equipment via the internet. By 2000, it had become a leader in providing goods and services to the healthcare community. Creditor is a German entity engaged in manufacturing surgical equipment and aesthetic lasers for use in healthcare. It did not have a strong sales presence in the U.S. market. As a result, in June, 2000, Creditor and Debtor entered into a Distribution Agreement ("Agreement") whereby Debtor would serve as Creditor's exclusive distributor in North America, and Creditor would serve as Debtor's exclusive laser manufacturer. *Appellant's Opening Brief* at 5–6.

The Agreement contained two more important provisions: 1) an executive of Creditor would serve on the board of directors of Debtor; and 2) Creditor would invest $4,000,000 in Debtor—$2,000,000 in cash and $2,000,000 in the form of a credit memorandum for the purchase of inventory under the Agreement, and Creditor would thereby own an equity interest in

Debtor. Accordingly, pursuant to the Agreement, Dr. Bernard Seitz, Creditor's CEO, was appointed to Debtor's board of directors.[5] Also pursuant to the Agreement, 800,000 shares of Debtor's common stock, representing a 10.6% ownership interest, were issued to Creditor. *Appellant's Opening Brief* at 6–7.

In 2001, Debtor began experiencing financial difficulties. During the year preceding Debtor's bankruptcy filing, Creditor received only sporadic payments it was owed by Debtor and Debtor returned some inventory. Ultimately, Creditor lost its entire investment in Debtor and was owed approximately $1,000,000 by Debtor at the time it ceased operations.

*The Undisputed Facts and the Court's Ruling*

The undisputed facts regarding the relationship of the parties in this case, in the bankruptcy court's own words, are as follows:

From the evidence on this record, it appears that Dr. Seitz was something of a model director on [Debtor's] Board. He was very well informed about the debtor's finances and operations. He was conscientious about his Board service. He was available to management who apparently valued his consultation and contacted him regularly. He was sensitive to potential conflicts of interest arising from his primary affiliation with a major vendor of the debtor on whose Board he sat. Accordingly, he had day-to-day affairs between [Creditor] and the [Debtor] handled not by himself, but by another senior officer of [Creditor].

He declined to vote as a Board member on matters involving the debtor and [Creditor]. Dr. Seitz and the debtor's

---

**5.** There were eight to ten members on the board of directors. Dr. Seitz received no compensation for serving on the board, only a stock option package which he never exercised. *Appellant's Opening Brief* at 7.

senior management, in handling the affairs of the debtor and [Creditor], attended to the kinds of formalities one would expect to see in dealings between third parties at arm's length.

There is no evidence that in holding one seat on this debtor's Board, Dr. Seitz, as [Creditor's] representative, controlled, sought to control, or exercised any undue influence on the debtor.

There is also no evidence supporting the proposition that [Creditor as] a 10 percent shareholder of the debtor either controlled, or sought to exercise undue influence on the debtor.

*March 20, 2006, Transcript of Bench Decision* at 8–9, *in* Appellant's App. at 427–428. The bankruptcy court then stated:

Typically non-statutory insider status turns on particular facts concerning two things. The closeness of the particular relationship, and how far in the particular relationship the course of dealings strays from terms and conditions of conventional arm's length transactions of similar nature.

*Id.* at 9–10, *in* Appellant's App. at 428–429. Applying those criteria to the facts of the case, the bankruptcy court ruled as follows:

[T]his relationship, on this record, was conducted in a very business-like fashion, in complete good faith, without undue control or influence, and closely resembling like dealings of third parties at arm's length.

This notwithstanding on the record before it, the Court concludes [Creditor] was a non-statutory insider of [Debtor] in late 2001 and early 2002 when the transfers in question took place.

The extreme closeness of the relationship of [Creditor] and the Debtor is determinative.

*Id.* at 10, *in* Appellant's App. at 429. We disagree. We are persuaded by the Ninth Circuit BAP's conclusion that "not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship." *In re Friedman,* 126 B.R. at 70.

*Closeness Alone Does Not Give Rise to Insider Status*

The bankruptcy court specifically found that the parties' transactions were like those of third parties at arm's length. Further, the court found that Creditor exercised no undue influence on Debtor either because of its CEO's position on the board of directors or its equity ownership. The bankruptcy court's conclusion was based solely on the degree of closeness between the parties.

Some limitation must exist on the status of nonstatutory insider. We think the better rule is that closeness alone does not give rise to insider status. *In re Three Flint Hill Ltd. Partnership,* 213 B.R. 292, 300 (D.Md.1997) ("[I]t is clear that an arm's-length transaction between even close associates does not confer insider status."). If "closeness" alone were enough, the category of nonstatutory insiders would be impermissibly broadened. It is possible that under a "closeness" alone test any corporation that has an executive officer serving on the board of directors of another corporation would be an insider with respect to that corporation. Again, like the Ninth Circuit BAP, we believe it is "unlikely that Congress intended that complex business relationships existing over a period of time, attended by some personal involvement but without control by the creditor over the debtor's business, would subject such creditor to insider status." *In re Friedman,* 126 B.R. at 70.

As quoted above, the bankruptcy court itself said that it should consider "how far in the particular relationship the course of

dealings strays from terms and conditions of conventional arm's length transactions of similar nature." There is no evidence of that here. The bankruptcy court found that Creditor exercised no control or undue influence over Debtor. Therefore, Creditor received no benefit on account of its close relationship with Debtor than it otherwise would have received. On these facts, and in the absence of any evidence establishing that the transactions between Creditor and Debtor were conducted at anything other than arm's length, we decline to expand the definition of nonstatutory insider to include Creditor.

## CONCLUSION

The evidence establishes that the parties had an extremely close business relationship. However, Creditor exercised no control or undue influence over Debtor, and the transactions between the parties were conducted at arm's length, as the trial court so found. Therefore, the bankruptcy court's determination that Creditor was a nonstatutory insider with respect to Debtor for purposes of preferential transfers cannot stand and must be reversed.